MILLER *v.* BENTON.

4-4193

Opinion delivered March 2, 1936.

*R. W. Wilson* and *Danaher & Danaher,* for appellant.
*Reinberger & Reinberger,* for appellee.

HUMPHREYS, J.   Appellant brought suit against appellee in the chancery court of Jefferson County to recover $8,900 plus accrued interest at 7 per cent. since January 1, 1933, and to impress a lien therefor on the property of B. W. Benton, deceased, who had bequeathed and devised his estate to appellee.   The amount claimed was fixed by two $5,000 notes, Nos. 1 and 2, which had been executed on the 4th day of November, 1929, to appellant by B. W. Benton in part payment for his undivided one-half interest in the business and assets of the Benton-Miller Oil Company, and two insurance policies for $5,000 each on the life of appellant, in which B. W. Benton was named as beneficiary.   The entire consideration paid for said one-half interest and the insurance policies was $20,000, evidenced by the notes aforesaid and two other notes, Nos. 3 and 4 for $5,000 each.   The notes were payable on January 3, 1932.   The sale was closed by contract of even date with the notes,

and was, in effect, a dissolution of the partnership firm of Benton-Miller Oil Company. Under the terms of the contract, the assets and management of the firm passed to B. W. Benton, who assumed all of the indebtedness against it. The business was, thereafter, operated by B. W. Benton until he died on the ............ day of ......................, 19....... The business became involved, and was about to be thrown into bankruptcy, so that in order that B. W. Benton might make a statement of his assets and liabilities that would appease his other creditors and prevent bankruptcy proceedings, appellant and B. W. Benton entered into a supplemental written contract, by which notes Nos. 1 and 2 were surrendered and canceled. The contract for the cancellation of the two notes contained the following paragraphs:

"It is understood and agreed that, should the said Benton-Miller Oil Company, prior to the death of either party to this instrument, be sold for such a sum as would have entitled the party of the first part to a sum of twenty thousand ($20,000) dollars as his one-half share of the net proceeds of the sale as of the date of the original contract, then, and in that event, this supplement shall be null and void, and the said B. W. Benton shall be liable to the said Will Miller for the face value of note No. 1 and note No. 2."

Subsequent to June 25, 1931, and before May 14, 1932, B. W. Benton paid interest only on all four of said notes. After his death, his widow, as legatee and devisee under his will, took charge of all of the property and thereby assumed all of his indebtedness, including the indebtedness to appellant. On January 1, 1933, she paid to appellant the sum due on note No. 3, being $5,000 plus accrued interest, and about August 1, 1933, she paid him the amount due on note No. 4, being $5,000 plus accrued interest, and also paid interest on all four notes up to January 1, 1933. These notes, or the amount due on them, were paid by appellee out of money she received from insurance companies on policies on B. W. Benton's life, and bonds owned by her individually and not out of the property that had been devised to her. The receipt appellant executed to appellee when she made the last

payment in August, 1933, says: "Being the full and complete settlement by Anastacia Benton of all indebtedness due to me." At the time the final payments were made to appellant and the receipts were executed, appellant released in writing all interest he might have in the two insurance policies which had been carried on his life in favor of B. W. Benton as beneficiary. At the time appellee made the final payment to appellant and took his receipt and release of any interest in the policies, no claim was made that she or her husband's estate owed notes Nos. 1 and 2, which had been canceled and surrendered. The estate of B. W. Benton was insolvent at the time he died, and all creditors compromised and settled with appellee for much less than their claims. Appellant testified that he loaned notes Nos. 1 and 2 to B. W. Benton to enable him to make a favorable statement to his creditors with the understanding that they would be returned to him and that owing to nervousness and an unsettled condition of his mind resulting from worry and physical disability, he did not read nor understand the contract in which he surrendered and canceled said notes. Also that he was not entirely at himself when he made the settlement, executed the receipts to appellee, and released his policies of insurance. He was supported in his statement that he loaned notes Nos. 1 and 2 to B. W. Benton by Mrs. Hunter, who testified that, at the solicitation of B. W. Benton, she persuaded appellant to lend the notes to him. The other witnesses who approached appellant to get him to turn notes Nos. 1 and 2 over to B. W. Benton testified, in substance, that they discussed the situation of the business with and advised appellant to surrender and cancel the notes in order that B. W. Benton could continue the business and prevent bankruptcy proceedings, and thereby enable him to pay notes Nos. 3 and 4. They all testified that appellant was capable of comprehending and did understand the situation and surrendered and canceled the notes and executed the contracts, receipts, and releases of his own accord and not because of undue influence exerted over him by them. Up to the time of the settlement and since, appellant has transacted all his

business, and as far as the record shows is doing so intelligently.

The chancery court found all the issues for appellee and dismissed the complaint of appellant for want of equity, from which is this appeal.

Appellant contends for a reversal of the decree because the surrender and cancellation of notes Nos. 1 and 2, made the basis of his suit, was without consideration and void; and, if not, that he was unduly influenced by friends and relatives to surrender and cancel them.

The continuation of the business was necessary in order for appellant to collect his notes. Its successful operation was the only security he had for the payment of the indebtedness. On account of the depression, the assets had shrunk in value and the earnings therefrom had decreased until the commercial creditors were about to institute bankruptcy proceedings and place it in the hands of a receiver. In order to continue the business, it became necessary to make up a statement that would satisfy the creditors, and in order to do this appellant, through the advice of his friends and relatives, surrendered and canceled notes Nos. 1 and 2. As a result of this action on his part, the business was continued, and appellant was enabled to collect notes 3 and 4 in the amount of about $10,000 in addition to interest on the four notes until he settled with appellee, who had acquired the business by bequest from her husband. It is apparent from the record that his loss would have been much greater than it was had he not canceled and surrendered notes Nos. 1 and 2. He therefore profited by the transaction. Appellant relies upon the rule of law that a debtor cannot satisfy his debt by paying a part of it and leaving the remainder of it unpaid, and cites the case of *Reynolds* v. *Reynolds*, 55 Ark. 369, 18 S. W. 377, in support of his position. There is an exception to this rule to the effect that if the party relinquishing the whole debt in part payment thereof receives a possible benefit, such possible benefit is sufficient consideration for the release of the entire indebtedness. This exception may be found in the case cited. The

instant case comes within the exception, as he received a benefit from the transaction.

Appellant also contends that he did not actually surrender and cancel the notes, but only loaned them to B. W. Benton. His written contract in surrendering and canceling them, as well as the weight of the oral evidence, is against him.

Appellant also contends he should not be bound by his written contracts, receipts, and releases, because he was incapable of transacting business, and was unduly influenced to execute the contracts, receipts, and releases. We are unable to say, after a careful reading and consideration of all the testimony in the case, that the finding of the chancellor is contrary to a preponderance of the evidence.

The decree is therefore affirmed.